Order Form (01/2005)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6419 | **DATE** | June 23, 2011 |
| **CASE TITLE** | Pantaleo v. Hayes et al | | |

**DOCKET ENTRY TEXT:**

The Court DENIES the Defendants' Motions to Strike (docs. # 162, 165, 166). The Court DENIES as moot the Plaintiff's Motions to Supplement (docs. # 169, 171).

■ [ For further details see attached order.]    Docketing to mail notice.

## STATEMENT

    Dean (or Deane — the parties spell it differently throughout their submissions to the Court) Pantaleo brought a five-count complaint against various Village of Hinsdale police officers and doctors and nurses associated with Adventist Hinsdale Hospital arising from his involuntary commitment to the hospital in November 2007. Among his claims, Pantaleo alleges the Defendants used excessive force in violation of 42 U.S.C. § 1983 both in restraining him and in medicating him, committed assault and battery against him, and intentionally inflicted emotional distress. Defendants move to strike Pantaleo's rebuttal experts.
    Pantaleo opted not to employ experts to testify in his case in chief. Defendants, however, put forward several experts. First, Defendants offer the testimony of Dr. Philip K. McCullough who opines that both the police officer's use of a taser to initially restrain Pantaleo and the later administration of a sedative were reasonable under the circumstances. Second, Defendants offers the testimony of a nurse, India Owens, who opines that the use of the sedative was reasonable under the circumstances. Finally, the Defendants offer the testimony of Dr. John Ortinau who also opines that the use of the sedative was reasonable. Owens and Ortinau both rely in large part on the "standard of care" to conclude that the use of the sedative was reasonable under the circumstances. McCullough references the Mental Health Code and "standard psychiatric medical practice" in supporting his opinion.
    Pantaleo's rebuttal experts do not directly reference any of the reports of the Defendants' experts. The proffered rebuttal experts, however, do address the Defendants' experts' reliance on the standard of care. Dr. Laura Zoloth, for example, points out six problems with the way in which the Defendants provided care. Likewise, Dr. Jeffrey Junig also opines that the problems with the Defendants' provision of care.
    Rebuttal evidence should "contradict, impeach or defuse the impact of evidence offered by the adverse party." *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008). Defendants argue that Pantaleo's experts are not properly rebuttal experts, but rather experts who provide testimony that supports Pantaleo's case in chief. But whether evidence *could have been* offered in a case in chief does not mean it cannot properly be rebuttal evidence. Rather, evidence that is offered "*only* as additional support to an argument made in a case in chief" is not rebuttal evidence unless it also

contradicts, impeaches or defuses the impact of evidence offered by the adverse party." *Id.* (emphasis added). While a party can not lay in wait if he knows that the opposing party will contest an issue, *Braun v. Lorillard, Inc.*, 84 F.3d 230, 237 (7th Cir. 1996), that requires only that a party submit some evidence to meet his burden on that issue and not that it anticipate the way in which the adverse party will contest that issue, *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001). Thus, the question for the Court is not whether Pantaleo could offer the testimony his offer the testimony of his experts in his case in chief, but rather does that testimony somehow contradict, impeach or defuse the impact of the Defendants' experts.

In arguing that Zoloth is not a rebuttal expert, the Defendants suggest only that none of their experts are bioethicists and that she does not reference the Defendants' expert reports. Defendants raise similar arguments regarding Junig's report. These arguments are cursory at best and they never attempt to explain why they believe that Pantaleo's experts do not "contradict, impeach, or defuse the impact" of the evidence to be offered by their experts. Defendants point to no caselaw that requires a rebuttal expert to directly cite the adverse party's expert reports. Nor do the Defendants point to caselaw that requires a rebuttal expert to share a precise field of expertise with the opposing party's expert. As noted earlier, Defendants' experts share their opinions about the standard of care in administering Pantaleo medication. Pantaleo's experts share opinions that contradict the Defendants' experts' opinions concerning the standard of care. In this regard, Pantaleo's experts rebut evidence the Defendants offer.

Defendants also argue that the issues Junig raises are "germane to [Pantaleo's] prima facie case." Defendants offer no explanation regarding the element of Pantaleo's case to which his opinions are germane. With regard to Pantaleo's assault and battery claim, he need not put any evidence regarding the medical standard of care. Battery is defined as the unauthorized touching of another individual. *Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 69 (Ill. App. Ct. 2007). Dr. Martinez suggests that Section 2-107(a) of the Mental Health Code provides him with an affirmative defense to Pantaleo's claims. But if the Defendants' experts' testimony is relevant to an *affirmative defense* then, by definition, the testimony is not germane to Pantaleo's prima facie case; rather, it is germane to the Defendants' affirmative defense, for which they, and not Pantaleo, bear the burden of proof. *See In re Estate of Allen*, 365 Ill. App. 3d 378, 386 (Ill. App. Ct. 2006) (discussing affirmative defenses to battery in context of unauthorized medical care). Similarly, nothing about the tort of intentional infliction of emotional distress requires Pantaleo to put forward evidence that Dr. Martinez violated the standard of care. *Cangemi v. Advocate S. Suburban Hosp.*, 364 Ill. App. 3d 446, 470 (Ill. App. Ct. 2006) (noting that elements of an emotional distress claim include extreme and outrageous conduct, intent to cause emotional distress, and actual emotional distress). Finally, Pantaleo's § 1983 claim requires him to demonstrate, among other things, that the Defendants' use of force under the circumstances was unreasonable. *Graham v. Connor*, 490 U.S. 386 (1989). Again, Defendants' argument that the Mental Health Code provides an objectively reasonable basis for their actions (and therefore defeats Pantaleo's excessive force claim) is framed as an affirmative defense to Pantaleo's claim. *See Anderson v. Village of Forest Park*, 238 Ill. App. 3d 83, 94-95 (Ill. App. Ct. 1992) (discussing whether Mental Health Code provides a basis for an affirmative defense). While the question of what amount of force is reasonable is one for a jury — and thus part of Pantaleo's prima facie case — he can demonstrate that the amount of force used by the Defendants is unreasonable in many different ways and need not reference the medical standard of care to prove the Defendants used excessive force in restraining him. Should Pantaleo fail to offer sufficient proof in his case in chief that the force used by the Defendants was excessive, Defendants may move for a directed verdict.

At least one of the Defendants argues, cursorily, that Zoloth does not meet the *Daubert* standard. The Defendant argues that "Zoloth's purported opinions are little more than an academic or mere philosophical view of patient treatment" and do nothing more than call for legal conclusions. In short, the Defendant seems to argue that Zoloth opines only about what the standard of care *should be*. The Court disagrees. Zoloth bases her opinion on her expertise in clinical bioethics and her practice as a registered nurse. Zoloth points out specific errors that Defendants made in treating Pantaleo. She discusses how these errors demonstrate that the Defendants did not meet the standard of care. To the extent that Zoloth's opinion touches on what the standard of care *should be* those opinions are not relevant and will not be allowed. Defendants develops no real argument that Zoloth is not qualified to provide testimony about whether the Defendants' actions violated the standard of care.

The Court DENIES Defendants' Motions to Strike.

*[Signature]*