# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEAN PANTALEO,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08 C 6419 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| OFFICER LOUIS HAYES, JR., | ) |
| OFFICER ANTHONY MARAVIGLIA, | ) |
| VILLAGE OF HINSDALE, ROBERT | ) |
| GRONER, SECURITY GUARD | ) |
| SANCHEZ, NURSE PITTS, DR. | ) |
| MARTINEZ, and ADVENTIST | ) |
| HINSDALE HOSPITAL, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

In this section 1983 civil rights suit against Officer Louis Hayes, Jr., Officer Anthony Maraviglia, the Village of Hinsdale (the "Village"), Security Guard Robert Groner, Security Guard William Sanchez, Nurse Melissa Pitts, Dr. Carlos Martinez, and Adventist Hinsdale Hospital (the "Hospital"), plaintiff Deane Pantaleo alleges claims against Hayes, Maraviglia, and the Village for false arrest and against all defendants for excessive force. Pantaleo also alleges state law claims for assault and battery and intentional infliction of emotional distress ("IIED") against all defendants and for malicious prosecution against Hayes, Maraviglia, and the Village. Before the court are defendants' motions to bar the testimony of Laurie Zoloth, Ph.D.[2] For the following reasons, defendants' motions [#229, 276, 280] are granted.

---

[1] The caption of the complaint identifies the plaintiff as "Dean Pantaleo," but the correct spelling of his first name appears to be "Deane."

[2] Filed concurrently with this opinion and order is an opinion and order on defendants' motions for summary judgment.

# BACKGROUND[3]

Pantaleo disclosed Dr. Laurie Zoloth, Ph.D. as a rebuttal expert. Dr. Zoloth is a bioethicist with a doctorate in social ethics from the Graduate Theological Union in Berkeley, California. Dr. Zoloth is a professor at Northwestern University, teaching in the Medical Humanities and Bioethics program, the Jewish Studies program, and the Religious Studies department. She was the founding director of the Center for Bioethics, Science and Society at Northwestern's Feinberg School of Medicine. She was the president and a two-term member of the board of the American Society for Bioethics and Humanities and the founding chair of the Howard Hughes Medical Institute's Bioethics Advisory Board. Dr. Zoloth has also served on various other national advisory boards and editorial boards of several journals, including the American Society for Law, Medicine and Ethics Journal, the Journal of Clinical Ethics, and the American Journal of Bioethics. She has published extensively in ethics, feminist theory, religion and science, and social policy areas and authored a book entitled Health Care and the Ethics of Encounter. Dr. Zoloth also holds a BSN from the University of the State of New York and worked as a registered nurse, though she is not licensed in Illinois and has not practiced in a clinical setting since 1989. She is the co-founder of the Ethics Practice, which provides clinical ethics consultation and education services to health care providers and health care systems. She has previously acted as a bioethicist for the mental health facilities at Washington Township Hospital and has also conducted ethics rounds and consultations in emergency rooms of similar

---

[3] The court has set forth the relevant background facts of this case in its opinion and order on defendants' motions for summary judgment, filed concurrently with this opinion. The court will not repeat those background facts here, except as relevant to resolution of this motion.

size to that of the Hospital.  Dr. Zoloth has trained nurses and medical students on informed consent and the right to refuse treatment.

Dr. Zoloth has opined that, "as an expert in the field of bioethics," it is her opinion that "the police authorities, hospital guards, and medical personnel in the emergency room of the Hinsdale Hospital have violated the core principles of bioethics and the intent and spirit of the norms that undergird the regulations about treatment of the mentally ill patient." Zoloth Report at 5–6.  This violation, she opines, was "made worse by the aggressive and punitive actions of the police and the method by which the vulnerable patient was forced to accept medical care against his will, against his conscious choice and without the protection of family support." *Id.* at 6.  She identifies several issues with the way care was provided to Pantaleo on the morning of November 11, 2007, including a lack of clear reporting on the medical plan at the shift change, a lack of leadership, a failure to create a safe place for Pantaleo, and a failure to treat Pantaleo medically and therapeutically.

Dr. Zoloth maintains that "[i]nformed consent and the right to refuse medical treatment is one of the cornerstones of American Bioethics" and "a basic human right." *Id.* at 4–5.  She opines that the right to refuse medical care can only be abrogated by a court order, although she admits that best interest decisions may be assigned to a doctor or nurse "in cases of extreme emergency, when time is of the essence." *Id.* at 9.  In Pantaleo's case, however, she opines that "the pressure for pharmaceutical intervention was not a life and death matter, other interventions were not tried, and the patient was in no danger nor was he a danger to the staff if he had simply been left alone." *Id.*  She sets forth certain guidelines that should be followed in mental health care, citing from the Concise Guide to Ethics in Mental Health Care, and opines that none of the

3

steps were taken. She ultimately concludes that Pantaleo "was not treated with the care, respect and compassion that was his right" and that the "medical personal [*sic*], the social worker, the hospital and the police failed to protect, much less provide advocacy or a safe environment as was their duty." *Id.* at 11.

In her deposition, Dr. Zoloth admitted that "[t]here [are] no absolute or objective standards" in clinical ethics but instead only "better and worse arguments." Zoloth Dep. 98:23–99:2. She testified that the bioethical standards she prescribes to and maintains should have been followed here are "morally binding." *Id.* at 131:19–132:18. She explained that bioethics "codifies [doctor-patient] relationships in moral language, not in legal language, but they're binding, nonetheless, I would suspect." *Id.* at 135:12–17. Although Dr. Zoloth discussed certain core competency guidelines hospitals should adopt with respect to bioethics, she admitted that she was not aware of any hospitals in Illinois that have adopted those guidelines. *Id.* at 105–06.

Dr. Zoloth opined that defendants "failed to comply with their moral obligations towards a desperately ill young man." *Id.* at 137:7–9. Yet she admitted that if a patient is a danger to himself or others, administration of medication against a patient's will may be appropriate. *Id.* at 66:7–12. She also admitted that she had not reviewed the medical records in this case. *Id.* at 52–55.

## LEGAL STANDARD

The admission of expert opinion testimony is governed by Federal Rule of Evidence 702 and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *See Bielskis* v. *Louisville Ladder, Inc.,* 663 F.3d 887, 893 (7th Cir. 2011). Rule

702 states that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise provided that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. To admit expert testimony under this rule, the court must determine that (1) the witness is qualified; (2) the expert's methodology is reliable; and (3) the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Myers* v. *Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).

In *Daubert*, the United States Supreme Court set out four factors the court may consider when assessing the reliability of an expert's methodology, including (1) whether the theory is based on scientific or other specialized knowledge that has been or can be tested; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the theory's operation; and (4) the extent to which the theory is generally accepted in the relevant community. *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 151, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). These factors, however, are not a "definitive checklist or test," *Daubert*, 509 U.S. at 593, and the importance of different factors will vary based on "the particular circumstances of the particular case at issue." *Kumho*, 526 U.S. at 150. The objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the

same level of intellectual rigor that characterizes the practice of an expert in the relevant field."
*Id.* at 152.

The Rule 702 inquiry "is a flexible one." *Daubert,* 509 U.S. at 594. As such, "[d]eterminations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton* v. *McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). The proponent of the testimony bears the burden of proving that the proffered testimony meets these requirements, and the Seventh Circuit grants the district court "wide latitude in performing its gate-keeping function." *Bielskis*, 663 F.3d at 894.

## ANALYSIS

Defendants argue that Dr. Zoloth is not qualified to render opinions regarding the standard of care in this case or the use of force involved, that Dr. Zoloth's testimony is not proper rebuttal evidence,[4] and that her opinions are not reliable because they are not based on any objective standards. Pantaleo, in response, admits that Dr. Zoloth is not qualified to opine on the standard of care required of Martinez or Pitts in performing their duties. Dkt. No. 282 at 28. Instead, Pantaleo offers that "he should be allowed to offer Dr. Zoloth's opinions concerning the right of the patient to refuse the forced medication or medical treatment" if there is testimony

---

[4] Defendants argue that Dr. Zoloth's testimony is inappropriate because "[n]o defense expert has opined regarding the morality of Illinois' laws dealing with the involuntary administration of medication" and instead have only testified "regarding the clinical application of existing law and existing medical standards of care." *See, e.g.*, Dkt. No. 229 at 10. But this court has already considered defendants' argument that Dr. Zoloth is not a proper rebuttal expert, finding that "Pantaleo's experts share opinions that contradict the Defendants' experts' opinions concerning the standard of care" and thus are proper rebuttal experts. Dkt. No. 179 at 2. The court noted that defendants "point[ed] to no case law that requires a rebuttal expert to directly cite the adverse party's expert reports" or "that requires a rebuttal expert to share a precise field of expertise with the opposing party's expert." *Id.* Defendants have not provided the court with any case law or other argument that would require reconsideration. Thus, the court will not bar Dr. Zoloth based on the argument that she is not providing proper rebuttal testimony.

6

that "defendants could use a Taser gun and force medical treatment while ignoring the patient's exercise of the right to refuse medical treatment because of the perception that plaintiff might be a danger to himself or others." Dkt. No. 282 at 29. But this is itself testimony regarding the standard of care that should have been followed in treating Pantaleo.

No one disputes that Pantaleo generally had the right to refuse medication or treatment. Dr. Zoloth's testimony on this accepted issue would not aid the trier of fact. Pantaleo acknowledges that this right was qualified, in that medication could have been administered if there was a medical emergency and less restrictive alternatives were not available. Expert testimony is admissible—and defendants insist necessary—on whether a medical emergency existed and less restrictive alternatives were available. Pantaleo has not provided any basis to find that Dr. Zoloth is qualified to testify as to whether a medical emergency existed or whether less restrictive alternatives were available. Dr. Zoloth is not a medical doctor, and Pantaleo does not argue that her experience as a nurse qualifies her to discuss the standards a nurse like Pitts should have followed in the emergency room. Nor has Pantaleo demonstrated that Dr. Zoloth is qualified to testify as to the appropriate use of force in the situation defendants faced.

Unqualified to testify on the existence of an emergency or other available alternatives, Dr. Zoloth's opinion consists essentially of the fact that defendants failed to comply with their moral obligations in treating Pantaleo. Violations of a doctor's ethical standards may be relevant to determining whether a physician has breached the standard of care. *See Neade* v. *Portes*, 710 N.E.2d 418, 427, 303 Ill. App. 3d 799, 237 Ill. Dec. 788 (1999), *rev'd on other ground*, 710 N.E.2d 418, 193 Ill. 2d 433, 250 Ill. Dec. 733 (2000). But Dr. Zoloth does not rely on the American Medical Association's code of ethics or any other professional code to opine that

7

ethical standards were violated. Instead, she admits that there are no "absolute or objective" clinical ethical standards. Zoloth Dep. 98:23–99:2. She does cite to the Concise Guide to Ethics in Mental Health Care as guidelines for "the expected standard of care for the patient who presents in the emergency room." Zoloth Report at 10. Pantaleo has already implicitly admitted that Dr. Zoloth cannot testify on the standard of care applicable in the emergency room. Moreover, Pantaleo has not provided any support for finding that the Concise Guide to Ethics in Mental Health Care is the accepted standard for the American Psychiatry Association or any such similar organization or that it has been otherwise generally accepted within the relevant medical community. Without support that this Concise Guide applies to the defendants here, Dr. Zoloth's testimony is essentially based only on her personal opinion of what she believes defendants should have done as opposed to what they were required to do. *See Johnson* v. *Wyeth LLC*, No. CV 10-02690-PHX-FJM, 2012 WL 1204081, at *2 (D. Ariz. Apr. 11, 2012) ("An expert witness cannot opine that defendants breached a standard of care unless that standard exists. Because plaintiff cannot point to any objective standard relied on by [his experts] that required defendants to perform additional testing, plaintiff has not shown that the failure to test opinions are anything more than 'subjective belief or unsupported speculation.' Consequently, they are unreliable and inadmissible." (citation omitted)); *In re Preempro Prods. Liab. Litig.*, No. 4:03CV01507-WRW, 2010 WL 5663003, at *2 (E.D. Ark. Sept. 16, 2010) (excluding testimony were it "could only be a subjective opinion on what [the experts] believe Defendants **could have done** rather than what industry or governmental standards **require** them to do"); *id.* ("Without some established industry standard, Dr. Blume would only be able to subjectively testify about what companies **could** do by the way of testing rather than what

Defendants were required to do."). The court has already observed that Dr. Zoloth's opinions regarding what she believes the standard of care *should* be are not admissible. Dkt. No. 179 at 2. The same goes for any testimony regarding whether these allegedly "morally binding" standards were violated here. Because Pantaleo has not satisfied his burden of demonstrating that Dr. Zoloth is qualified to render opinions regarding the medical standard of care or that Dr. Zoloth's opinions are otherwise reliable or relevant to the issues in this case, Dr. Zoloth's proposed testimony will not be allowed.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motions to bar the testimony of Laurie Zoloth, Ph.D. [#229, 276, 280] are granted.

Dated: September 17, 2013                Enter: _____
                                                JOAN HUMPHREY LEFKOW
                                                United States District Judge