IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEAN PANTALEO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 08 CV 6419 |
| | ) | |
| OFFICER LOUIS HAYES, JR., individually and | ) | Hon. Joan Humphrey Lefkow, |
| in his official capacity as a police officer for the | ) | Judge Presiding. |
| Village of Hinsdale, OFFICER ANTHONY | ) | |
| MARAVIGLIA, individually and in his official | ) | |
| Capacity as a police officer for the Village of | ) | Hon. Maria Valdez, |
| Hinsdale, VILLAGE OF HINSDALE, a municipal | ) | Magistrate Judge. |
| Corporation and ROBERT GRONER, SECURITY | ) | |
| GUARD SANCHEZ, NURSE PITTS, and DR. | ) | |
| MARTINEZ, individually and as employees of | ) | |
| ADVENTIST HINSDALE HOSPITAL and | ) | |
| ADVENTIST HINSDALE HOSPITAL, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DR. CARLOS MARTINEZ'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant, Dr. Carlos Martinez, M.D. ("Dr. Martinez"), by and through his attorneys, LANGHENRY, GILLEN, LUNDQUIST & JOHNSON, LLC, and pursuant to Federal Rule of Civil Procedure 50(a), moves for judgment as a matter of law in his favor as to all pending claims against him. In further support thereof, he states as follows:

**Judgment as a Matter of Law Under Rule 50(a)**

Federal Rule 50(a) allows a defendant to move for judgment as a matter of law before the matter goes to the jury by "specify[ing] the judgment sought and the law and facts that entitle the movant to the judgment." FED. R. CIV. PROC. 50(a)(2). The rule further provides:

> (1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FED. R. CIV. PROC. 50(a)(1); *Thompson v. Boggs*, 33 F.3d 847, 851 (7th Cir. 1994). The standard for granting a motion for judgment as a matter of law mirrors the standard for summary judgment. *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 886-87 (7th Cir. 2001). Such a motion is properly granted where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Harper v. Albert*, 400 F.3d 1052, 1061 (7th Cir. 2003) (citations omitted).

A similar standard also applies with respect to state law claims under Illinois law. Judgment in favor of the moving party may be rendered on state law claims if "all the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Gelderman v. Financial Management Consultants, Inc.*, 27 F.3d 307, 310 (7th Cir. 1994) (internal quotations omitted).

**Argument**

Plaintiff was allowed to proceed to trial on two claims against Dr. Martinez. In Count II of the First Amended Complaint [Document 38] plaintiff alleges that Dr. Martinez is liable for excessive force via a conspiracy theory. In Count IV, plaintiff alleges assault and battery against Dr. Martinez for ordering the administration of medication without his consent.[1]

Plaintiff's excessive force claim fails because he cannot establish the necessary elements of a conspiracy by which Dr. Martinez could ever be said to have acted under color of law as required in an action under Section 1983. In addition, plaintiff's excessive force claim fails

---

[1] The court has previously granted Defendants' motions for summary judgment regarding the use of physical restraints in this case. [Doc. 292 at p. 32, 40]

2

because he has presented no evidence to show that Dr. Martinez's decision was "such a substantial departure from accepted professional judgment, practice or standards" that it was not based on any such judgment at all as required to sustain a finding of liability under *Youngberg v. Romeo,* 457 U.S. 307, 323 (1982). This omission is fatal to plaintiff's claim.

Dr. Martinez is also entitled to judgment as a matter of law on plaintiff's claim for assault and battery based on plaintiff's failure to present any evidence supporting his *prima facie* case against Dr. Martinez. There is no legally sufficient evidentiary basis for a reasonable jury to find that Dr. Martinez committed a battery on plaintiff. As a result, judgment must be entered in favor of Dr. Martinez as a matter of law.

Finally, if plaintiff is allowed to submit any of his claims to the jury, Dr. Martinez is entitled to judgment as a matter of law on plaintiff's eve-of-trial assertion that Dr. Martinez is liable for punitive damages. Punitive damages have never been pleaded against Dr. Martinez in this case after years of litigation. To allow plaintiff to proceed with a punitive damages claim at this late date is highly prejudicial to Dr. Martinez. Furthermore and without waiving this argument, a punitive damages instruction is plainly not supported by the evidence presented at trial and there is nothing to support the contention that Dr. Martinez's medical care of plaintiff warrants any damages, much less punitive damages. As discussed below, the court should enter judgment as a matter of law in favor of Dr. Martinez on all claims.

**I.   Plaintiff Cannot Sustain his Claim for Excessive Force Pursuant to 42 U.S.C. § 1983 and Judgment as a Matter of Law Must Be Entered in Favor of Dr. Martinez.**

It is undisputed that Dr. Martinez did not use any force on the plaintiff on November 11, 2007. It is also undisputed that Dr. Martinez is not a state actor, who individually could act under color of state law. As a result, the only way for plaintiff to succeed on his Section 1983 claim against Dr. Martinez is to establish that he conspired with the defendant police officers. *Dennis v.*

3

*Sparks*, 449 U.S. 24, 27 (1980); *Bowman v. City of Franklin,* 980 F.2d 1104, 1107 (7th Cir. 1992). Plaintiff has not established the requisite "meeting of the minds" to succeed on a conspiracy claim. Rather, the evidence fails to demonstrate that there was a "single plan" whose "general nature and scope" was known to Dr. Martinez and each of the other defendants. *Hernandez v. Joliet Police Dep't,* 197 F.3d 256, 263 (7th Cir. 1999).

Moreover, the undisputed evidence is that Dr. Martinez exercised his clinical medical judgment to determine that the plaintiff's condition required him to be medicated against his will for his own safety and that of others. Plaintiff has not presented any evidence to rebut Dr. Martinez's presumptively valid medical judgment or to otherwise show that Dr. Martinez's decision to medicate the plaintiff was "such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg,* 457 U.S. at 323.

In fact, the only evidence regarding the appropriate practice or standards presented to the jury in this case is the undisputed testimony that Dr. Martinez fully complied with the applicable standard of care. Plaintiff's expert, Dr. Junig, never discussed any applicable standards of accepted professional judgment or practice, much less opined that Dr. Martinez's action was "such a substantial departure" from accepted practice as required to sustain a finding of liability under *Youngberg.*

### A. There Is No Evidence Supporting a Conspiracy Among the Defendants.

In order to "[t]o establish Section 1983 liability through a conspiracy theory, [the] plaintiff must demonstrate that: (1) [the defendant officers] and [Dr. Martinez] ***reached an understanding*** to deprive the plaintiff of his constitutional rights, and (2) [Dr. Martinez] [was] a ***willful participant[] in joint activity*** with the [defendant officers]." *Brokaw v. Mercer County*,

235 F.3d 1000, 1016 (7th Cir. 2000) (emphasis added). There is no evidence of the requisite understanding to deprive plaintiff of his rights or willful participation in joint activity to support plaintiff's conspiracy claims in this case.

Dr. Martinez, as a private actor, did not act under the color of law merely by waiting for the police officers to arrive and present a "show of force," a nonviolent method to help control a potentially violent patient and allow the physician to assess the patient's mental status. *See Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F.Supp.2d 1000, 1008 (E.D.Wis. 2010). Rather, the evidence must show an actual conspiracy, or "an agreement on a joint course of action in which [Dr. Martinez] and the [officers] [had] a common goal." *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989). "When considering whether a plaintiff can establish the existence of a conspiratorial agreement, '[t]he conspirators must act with a single plan, the general nature and scope of which is known to each would-be conspirator.'" *Sexton v. Cotton*, 2008 U.S. Dist. LEXIS 89762, (N.D.Ill. Nov. 5, 2008) *quoting Hernandez,* 197 F.3d at 263. Although an agreement could be inferred from circumstantial evidence, there must be "sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Hernandez*, 197 F.3d at 263.

Here, the plaintiff was required to present evidence that Dr. Martinez and the defendant officers reached "a meeting of the minds" to tase him and order the Geodon injection. *See Prince v. Campbell,* 314 F.Supp.2d 793, 795 (N.D.Ill. 2004); *Ryan v. Mary Immac. Queen Ctr.,* 188 F.3d 857, 860 (7th Cir. 1999); *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007) ("[T]he minimum ingredient of a conspiracy . . . is an agreement to commit some future unlawful act in pursuit of a joint objective").

However, the evidence presented at trial is that Dr. Martinez was never aware that the plaintiff might be tased, and he never discussed the potential use of a taser with the police officers or anyone else. [Exhibit A, Trial Testimony of Dr. Martinez at p. 173:2-10] Dr. Martinez never directed or asked the police officers to do anything at any time. [Exhibit A at 173:5-7] The officers testified that they only discussed the *possibility* of tasing the plaintiff between themselves, and no one else. The officers also testified that they never took any instruction or direction from Dr. Martinez or any of the hospital staff. Rather, they independently took action to intervene and restrain plaintiff on their own initiative. The only evidence presented is that there was never any predetermined plan as to what would occur when Dr. Martinez entered the room to assess the plaintiff.

The evidence at trial demonstrates that the defendant officers' decision to tase the plaintiff was a unilateral act, as opposed to a joint and concerted act among all of the defendants. That decision was not the subject of any prior understanding or meeting of the minds between Dr. Martinez and the defendant officers. As a result, the plaintiff cannot establish that a conspiracy existed and his claim must fail as a matter of law. Officer Hayes plainly testified that he only discussed the possible use of the taser, if necessary, with Officer Maraviglia. Officer Maraviglia's testimony corroborates this fact. In addition, both officers testified that they did not tase the plaintiff to give medication; rather they intervened to act on their own initiative when plaintiff jumped off the bed and slammed the door on hospital staff.

Furthermore, the trial testimony demonstrates that Dr. Martinez had not concluded that the plaintiff would need medication at the time that he had a discussion with the officers. [Exhibit A at p. 170:1-13] Rather, the evidence demonstrates that Dr. Martinez repeatedly gave the plaintiff the option to avoid medication by calming down and refraining from further violent

and aggressive behavior. [Exhibit A at pp. 76, 99:6, 166-167, 167:16-168:2], Even plaintiff testified that he was given the option to avoid medication. [Exhibit B, Trial Testimony of Deane Pantaleo at p. 27:18-22, 57:4-7] It was only after plaintiff failed to do so and the situation escalated that Dr. Martinez determined, based on reasonable medical judgment, that he would order the medication. [Exhibit A at p. 170:1-13]

There was no preconceived plan in place to medicate the plaintiff prior to Dr. Martinez's evaluation of the plaintiff, and he had no subsequent conversation with the officers to reach a meeting of the minds on their next course of action. As set forth by the evidence, the officers did not participate in the decision to order the medication. On the contrary, the evidence demonstrates that Dr. Martinez only gave the order to medicate plaintiff after he failed to calm down and become violent and aggressive. The decision to medicate plaintiff was not made in advance and could not support a conspiracy on that basis. Indeed, if there was a predetermined plan to medicate plaintiff, it would not have been necessary for Dr. Martinez to go into the room at all and he could have ordered the administration of medication at any point prior to the events in question. [Exhibit A at pp. 178-179]

The evidence fails to demonstrate that the parties had any discussion, much less reached a meeting of the minds, either to tase or to forcibly medicate the plaintiff in advance of the situation which developed in Room 17. Because the evidence demonstrates that the defendants did not and could not have agreed on any premeditated plan or course of action, the plaintiff's conspiracy claim fails as a matter of law, and judgment must be entered in favor of Dr. Martinez and against plaintiff on his Section 1983 claim.

**B. Dr. Martinez's Order for Medication Was a Presumptively Valid Medical Judgment. Plaintiff has Presented No Evidence Sufficient to Meet His Burden of Proof under *Youngberg*.**

Hypothetically, even if the evidence was sufficient to create a question of fact as to whether a conspiracy to medicate the plaintiff existed, the plaintiff's conspiracy claim nonetheless fails due to the lack of any underlying unlawful or unconstitutional conduct. The administration of medication against the plaintiff's will is not inherently unlawful, and absent an underlying unlawful act, there can be no conspiracy. 405 ILCS 5/2-107; *Cooney v. Casady,* 735 F.3d 514, 519 (7th Dist. 2013)

In this instance, the decision to order medication was reasonable and justified under the circumstances. Plaintiff has not presented any evidence calling Dr. Martinez's medical judgment to order the medication in question. There has been no testimony that Dr. Martinez's decision to order medication violated the standard of care or deviated from accepted professional standards or practice in any fashion. As his judgment was presumptively valid, it could not serve as the basis for a conspiracy to deprive plaintiff of his constitutional rights. *See Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) (a cause of action for conspiracy requires "an actual denial of a civil right").

This Court has previously articulated that Dr. Martinez's decision to order the Geodon injection is considered "presumptively valid" and that "liability may only be imposed when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *See* Opinion and Order, Doc. 292 at pp. 29, 30 citing *Youngberg*, 457 U.S. at 323; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 262 (7th Cir. 1996) ("The right to be free from bodily restraint is breached when an individual is restrained unless the

decision was made 'pursuant to an appropriate exercise of judgment by a health professional.'" (quoting *Wells*, 777 F.2d at 1261)).

Observing the heightened level of plaintiff's burden in this regard, the Court has noted that other courts have alternatively framed this analysis as whether the decision to administer the injection was made "maliciously and sadistically to cause harm." *Id.*; *Bomprezzi* v. *Kaprivnikar*, No. 11-CV-03344-REB-MEH, 2012 WL 7763089, at *6 (D. Colo. Aug. 3, 2012) (proper inquiry for allegations of excessive force based on mandated injections administered against prisoner's will is "whether the allegations demonstrate the injections were applied maliciously and sadistically to cause harm"); *Yeldon* v. *Sawyer*, No. 9:10-CV-266, 2012 WL 1995839, at *4–5 (N.D.N.Y. Apr. 26,2012) (same), *report & recommendation adopted*, 2012 WL 1987134 (N.D.N.Y. June 4, 2012).

Plaintiff has presented no evidence to rebut the presumptively valid medical judgment of Dr. Martinez. The standard for liability under Section 1983 requires that the plaintiff make a showing far beyond that required to establish mere medical negligence, and instead, he must show that Dr. Martinez's medical decision amounted to one that was made "maliciously and sadistically to cause harm." *See Bomprezzi*, 2012 WL 7763089, at *6; *Yeldon*, 2012 WL 1995839, at *4–5. There is simply no evidence in this case to support such a finding against Dr. Martinez.

Plaintiff's own trial testimony establishes that Dr. Martinez was very professional and calm while interacting with him on the morning of November 11, 2007. [Exhibit B at p. 57:23-25] Plaintiff testified that it did not seem that Dr. Martinez wanted to force him to take medication. [Exhibit B at p. 58:4-8] Similarly, Dr. Martinez's testimony confirms that he exercised reasonable medical judgment under the circumstances and acted out of concern for the

plaintiff's safety and best interests, as well as the safety of others at the hospital. [Exhibit A at pp. 169-170] To the extent that plaintiff has attempted to dispute Dr. Martinez's testimony with his own testimony, this is not sufficient to defeat the presumptively valid medical judgment of Dr. Martinez. *See e.g. Walker* v. *Shansky*, 28 F.3d 666, 672 (7th Cir. 1994) (plaintiff was not qualified to testify as to his own medical condition and could not defeat summary judgment with self-serving statements regarding his mental health).

To the extent that plaintiff relies on his expert, Dr. Junig, to support his excessive force claim, Dr. Junig did not testify that Dr. Martinez violated the standard of care, much less that his decision to order medication amounted to a "substantial departure" from any accepted standard of practice as required under *Youngberg*. Indeed, Dr. Junig offered no opinions or testimony whatsoever regarding the standard of care or any other applicable accepted professional judgment, practice or standard for the emergency administration of medication that would allow the jury to conclude that Dr. Martinez's order for medication could not have been rationally based on any such professional judgment. In fact, plaintiff has offered no evidence to dispute the testimony of Dr. Martinez and his expert, Dr. Ortinau, that Dr. Martinez complied with the applicable standard of care of an emergency medicine physician in all respects.

Even if other hypothetically less restrictive alternatives to medication may have been available, which Dr. Martinez denies and will continue to deny, plaintiff has not presented any competent evidence to establish that Dr. MartiFnez's clinical decision to order medication was a "substantial departure" from accepted professional practice and standards. *See Youngberg*, 457 U.S. at 323; *Washington*, 494 U.S. at 221-22; *Moriarity v. Rockford Health Sys. (In re Estate of Allen),* 365 Ill.App.3d 378, 387, 848 N.E.2d 202, 212 (2d Dist. 2006) (Under Illinois law, an assessment of what is medically required or necessary in light of a patient's medical condition is

inherently one of medical judgment and, as a result, necessitates expert testimony on the standard of care). There is also no evidence supporting the conclusion that Dr. Martinez forcibly medicated the plaintiff for malicious or sadistic reasons. *See Bomprezzi*, 2012 WL 7763089, at *6; *Yeldon*, 2012 WL 1995839, at *4–5.

Accordingly, plaintiff's evidence in this case cannot satisfy the "substantial departure" burden of proof required to prevail on his excessive force claim under *Youngberg*, irrespective of any question as to whether a conspiracy existed. Judgment must be entered as a matter of law in favor of Dr. Martinez and against plaintiff on his Section 1983 claim for excessive force.

## II. Judgment as a Matter of Law Must Be Entered in Favor of Dr. Martinez on the Battery Claim.

In order to prevail on his battery claim, plaintiff has the burden of proving that: (1) the defendant had the intent to cause a harmful or offensive contact with plaintiff; (2) that the defendant actually made unauthorized physical contact with plaintiff that was harmful; (3) that plaintiff was injured; and (4) that defendant's action caused the injury to plaintiff. *720 ILCS 5/12-3(a); Bakes v. St. Alexius Medical Center*, 955 N.E.2d 78, 84 (1st Dist. 2011).

In this case, the testimony has failed to establish any of the elements necessary to satisfy the claim and no reasonable jury could conclude that there was a sufficient evidentiary basis to find for plaintiff on his battery claim against Dr. Martinez. There is simply no evidence sufficient to conclude that Dr. Martinez had the intent to cause a harmful or offensive contact with plaintiff. It is undisputed that the entire incident took place in the context of an emergency psychiatric admission after plaintiff was involuntarily admitted pursuant to a Petition and Certificate for involuntary admission. Plaintiff testified that Dr. Martinez was very professional and calm while interacting with him on the morning of November 11, 2007. [Exhibit B at p. 57:23-25] Plaintiff further testified that it did not seem that Dr. Martinez wanted to force him to

take medication. [Exhibit B at p. 58:4-8] Plaintiff's own testimony belies his claim and no reasonable jury could conclude that Dr. Martinez acted with the intent required to satisfy even the first element of the *prima facie* claim for battery.

In addition, it is undisputed that Dr. Martinez was authorized to order the Geodon injection under the circumstances under Section 2-107(a) of Illinois Mental Health Code. *See Bakes*, 955 N.E.2d at 84. Since the plaintiff has not established a lack of lawful authority for the administration of the medication in his case, his battery claim must fail as a matter of law. *Id.*

Section 2-107(a) of Illinois Mental Health Code provides:

> An adult recipient of services or the recipient's guardian, if the recipient is under guardianship, and the recipient's substitute decision maker, if any, must be informed of the recipient's right to refuse medication or electroconvulsive therapy. The recipient and the recipient's guardian or substitute decision maker shall be given the opportunity to refuse generally accepted mental health or developmental disability services, including but not limited to medication or electroconvulsive therapy. **If such services are refused, they shall not be given unless such services are necessary to prevent the recipient from causing serious and imminent physical harm to the recipient or others and no less restrictive alternative is available.** The facility director shall inform a recipient, guardian, or substitute decision maker, if any, who refuses such services of alternate services available and the risks of such alternate services, as well as the possible consequences to the recipient of refusal of such services.

405 ILCS 5/2-107(a) (Emphasis added). Under this statute, a patient can be forcibly medicated if "an emergency situation exists where the individual poses an *immediate* threat of physical harm to himself or others." *Matter of Orr*, 176 Ill. App. 3d 498, 512, 531 N.E.2d 64, 73, (4th Dist. 1988).

Here, plaintiff's own expert, Dr. Junig did not testify that the situation was not a medical emergency and did not dispute Dr. Martinez's or his expert, Dr. Ortinua's testimony that the plaintiff presented a serious and imminent risk of harm to himself or others. Rather, Dr. Junig suggested that a less restrictive alternative to medication, such as additional talking or seclusion was available. Specifically, he testified that Dr. Martinez could have waited longer to see if the

plaintiff would calm down without the aid of medication. Critically, Dr. Junig was offered as a "rebuttal" expert, and although his criticisms are purely speculative as to the efficacy of "less restrictive alternatives," this evidence needed to be offered in plaintiff's case in chief. [Exhibit C, Trial Testimony of Dr. Junig at pp. 71-73] As it stands, the only evidence offered in plaintiff's case is that, based on Dr. Martinez's testimony, the medication was fully authorized by the Mental Health Code.

Based on this evidence, and the lack of any realistic alternatives, plaintiff cannot establish that Dr. Martinez acted without lawful authority to order the Geodon injection. The evidence has established that Dr. Martinez acted in conformity with Section 2-107(a) of the Illinois Mental Health Code. Plaintiff's expert, Dr. Junig, has offered no valid testimony to the contrary. Judgment as a matter of law must be granted in favor of Dr. Martinez on the battery claim based on the emergency administration of Geodon for the protection of plaintiff and those around him.

In addition, there is no evidence upon which a reasonable jury could conclude that Dr. Martinez's order for medication was harmful, that the plaintiff was injured or that Dr. Martinez's order was the cause of the injury. There has been no evidence presented in this case that plaintiff suffered any harm from the administration of medication. In fact, the Court ruled on Dr. Martinez's Motions in *Limine* No. 8 that "there is no evidence that Pantaleo suffered any physical complications as would be relevant to the question of damages" with respect to the order for Geodon. [Doc. 357 at p.11] Moreover, Dr. Junig acknowledged that all of his opinions as to less restrictive alternatives to medication were purely speculative. [Exhibit C at pp. 71-73]

Under any analysis of the evidence and taking the trial testimony as a whole, no reasonable jury could conclude that there is a legally sufficient basis to find that Dr. Martinez

committed a battery against the plaintiff. Judgment must be entered as matter of law in favor of Dr. Martinez and against plaintiff on Count IV of plaintiff's First Amended Complaint.

**III.     Judgment as a Matter of Law Must Be Entered in Favor of Dr. Martinez on Plaintiff's Claim for Punitive Damages.**

Plaintiff has never – at any time – pleaded punitive damages against Dr. Martinez in this case. In his original and first amended complaints, plaintiff pleaded punitive damages against only the "individually named Defendant Officers" in each count, and never pleaded punitive damages against Dr. Martinez. [Document No. 1 and 38] After years of litigation, plaintiff first raised the issue of punitive damages and asserted that he would be seeking punitive damages from Dr. Martinez during preparation of jury instructions as part of the parties' Final Pre-Trial Order. Dr. Martinez objected to plaintiff's proposed jury instructions and tendered a motion in *limine* on the topic. [Document 354-1, Martinez Motion in *Limine* No. 9] Dr. Martinez argued that he would be greatly prejudiced and irreparably harmed if plaintiff was allowed to plead punitive damages on the eve of trial and moreover, that there was insufficient evidence to present a claim for punitive damages to the jury. The Court reserved ruling on Dr. Martinez's motion and indicated that Dr. Martinez could renew the motion to bar punitive damages at the close of evidence. Consequently, Dr. Martinez renews his motion and moves to bar any claim for punitive damages in this case.

Alternatively, and without waiving the same, now that plaintiff has been fully heard and presented all of his evidence, the court must enter judgment as a matter of law on plaintiff's claim for punitive damages. In Section 1983 cases, punitive damages are available only upon showing evidence of some evil motive or intent, or a "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Similarly, under Illinois law, punitive damages are a question of law for the court, and require a showing of

14

"fraud, malice, oppression, willfulness, or wantonness." *Kenner v. Northern Illinois Medical Center*, 164 Ill.App.3d 366, 376, 517 N.E.2d 1137, 1144 (2d Dist. 1987).

Here, with respect to his interactions with Dr. Martinez, plaintiff testified that Dr. Martinez was calm and professional throughout his interaction with him. [Exhibit B at p. 57:23-25] Plaintiff testified that it did not seem that Dr. Martinez wanted to force him to take medication. [Exhibit B at p. 58:4-8] Punitive damages are not appropriate in this case. As noted with respect to judgment as a matter of law on the conspiracy claim above, there has been absolutely no evidence of any malice, evil motive or reckless indifference to the plaintiff's rights on behalf of Dr. Martinez. In such a case, punitive damages are not available to the plaintiff as a matter of law. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Additionally, plaintiff is precluded from bringing a claim against Dr. Martinez for punitive damages for medical battery under Illinois law. Section 2-1115 of the Illinois Code of Civil Procedure precludes punitive damages for any claims arising out of medical malpractice, and Illinois law on that issue should apply to this case. Moreover, even if punitive damages were available to the plaintiff for a medical battery claim, he would be required to show that Dr. Martinez failed to exercise proper medical judgment and instead acted willfully and wantonly.

To do so, plaintiff needed to support his claim for punitive damages with expert testimony. *See Holzrichter v. Yorath*, 2013 IL App (1st) 110287, P88, 987 N.E.2d 1, 19 (1st Dist. 2013)("[a] plaintiff challenging an implicit part of the medical treatment should not be able to avoid the requirement of an expert medical opinion simply by claiming medical battery or something other than medical malpractice"); *Schindel v. Albany Medical Corp.*, 252 Ill.App.3d 389, 397-398, 625 N.E.2d 114, 120 (1st Dist.1993)("An assessment of what is required or necessary in light of [a] medical condition is inherently one of medical judgment and, as a result,

necessitates expert testimony on the standard of care"); *McDonald v. Lipov*, 2014 IL App (2d) 130401, P27, 13 N.E.3d 179, 189 (2d Dist.2014). His failure to do so during his case in chief requires judgment as a matter of law in favor of Dr. Martinez on the punitive damages issue.

In any case, punitive damages are only available under Illinois law where the plaintiff makes a showing of "fraud, malice, oppression, willfulness, or wantonness." *Kenner,* 164 Ill.App.3d at 376, 517 N.E.2d at 1144. Plaintiff has presented no evidence to support such a showing and the Court should refuse to offer punitive damages instructions in this case and enter judgment as a matter of law in favor of Dr. Martinez on all claims.

WHEREFORE, Defendant Dr. Carlos Martinez, M.D., respectfully requests that this Honorable Court enter an Order granting judgment in his favor as a matter of law on Counts II and IV of Plaintiff's First Amended Complaint and on all claims against him, and for any other such relief as this Court deems just and necessary.

Respectfully submitted,

s/Suzanne Favia Gillen
Suzanne Favia Gillen


s/Andrew R. Stuart
Andrew R. Stuart

**Counsel for Defendant, Dr. Carlos Martinez:**
Suzanne Favia Gillen, #06196519
Andrew R. Stuart, #6287500
Langhenry, Gillen, Lundquist & Johnson, LLC
33 N. Dearborn Street, Suite 1600
Chicago, IL 60602
312-704-6700 Telephone
312-704-6777 Facsimile

## CERTIFICATE OF SERVICE

PLEASE TAKE NOTICE that the undersigned, an attorney, hereby certifies that he caused the attached: **DEFENDANT DR. CARLOS MARTINEZ'S MOTION FOR JUDGMENT AS A MATTER OF LAW,** to be served upon counsel of record in the above captioned matter by filing via the CM/ECF Electronic Filing system on this **13th** day of **October, 2014**.

By:     s/ Andrew R. Stuart
             Andrew R. Stuart, #6287500